***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby adopts the Deputy Commissioner's Opinion and Award with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. On March 23, 2006 the plaintiff was an employee of defendant-employer.
3. The carrier on the risk in this claim is Accident Fund Insurance Company of America.
4. Plaintiff's average weekly wage was $620.80, which yields a compensation rate of $413.89.
5. On March 23, 2006 plaintiff sustained a compensable injury by accident arising out of and in the course of his employment by defendant, to wit, a severe crush injury to his right arm.
6. Plaintiff last worked at defendant-employer on or about April 30, 2007, when he was discharged by defendant-employer.
7. Commission proceedings consisting of forty-five pages are received into evidence.
8. Plaintiff's medical records consisting of one-hundred and eleven pages are received into evidence.
 ***********
The following were stipulated into evidence as
 STIPULATED EXHIBITS
1. The Pretrial Agreement, marked as stipulated Exhibit 1.
2. A group of documents including Industrial Commission forms and Industrial Commission Orders collectively paginated 1-56 and marked as stipulated Exhibit 2.
3. Plaintiff's medical records, collectively paginated 1-111 and marked as stipulated Exhibit 3.
 ***********
The following were entered into evidence during the hearing as:
 EXHIBITS *Page 3 
1. A document containing plaintiff's work history marked as plaintiff's Exhibit 1.
2. A form from defendant-carrier entitled "Employee's Report of Injury" dated April 13, 2006 and signed by plaintiff, marked as plaintiff's Exhibit 2.
3. A letter on defendant-carrier's letterhead dated August 1, 2006 and marked as plaintiff's Exhibit 3.
4. A fax from defendant-carrier entitled "Return to Work Notice" dated August 15, 2006 and marked as plaintiff's Exhibit 4.
5. A letter from Mary Brewer, defendant-employer's Human Resources Director, dated August 10, 2006, marked as plaintiff's Exhibit 5.
6. A memo from Jim Brewer dated September 8, 2006 and marked as plaintiff's Exhibit 6.
7. A document from defendant-employer dated September 15, 2006, marked as plaintiff's Exhibit 7.
8. A letter on defendant-employer's letterhead dated September 19, 2006, marked as plaintiff's Exhibit 8.
9. A "Discipline Documentation Form" dated October 23, 2006, marked as plaintiff's Exhibit 9.
10. A letter on defendant-employer's letterhead dated January 29, 2007, marked as
plaintiff's Exhibit 10.
11. A "Summary of Communication" form marked as plaintiff's Exhibit 11.
12. A "Notice of Separation" dated May 2, 2007, marked as plaintiff's exhibit 12.
13. Defendants' responses to plaintiff's first set of interrogatories and request for production of documents, collectively marked as plaintiff's exhibit 13.
14. Six pages of plaintiffs job search reports, marked as plaintiff's exhibit 14.
15. A "Disciplinary Action Report" dated October 17, 2006 and marked as defendants' exhibit 1. *Page 4 
16. A "Discipline Documentation Form" dated October 18, 2006, marked as defendants' exhibit 2.
17. A "Discipline Documentation Form" dated October 23, 2006, marked as defendants' exhibit 3.
18. A "Discipline Documentation Form Final Warnings" dated April 25, 2007, marked as defendants' exhibit 4.
19. A memo from Jim Brewer dated April 23, 2007 entitled "GraphicPhotographs" and marked as defendants' exhibit 5.
20. A memo from Jim Brewer dated April 25, 2007 entitled "FinalWarnings" and marked as defendants' exhibit 6.
21. A memo from Jim Brewer dated April 30, 2007 entitled"Termination" and marked as defendants' exhibit 7.
22. Two pages of plaintiffs attendance forms marked as defendants' exhibit 8.
 *********** ISSUES PRESENTED
1. Whether defendants, in their Form 24 motion under N.C. Gen. Stat. § 97-32, have met their burden of proving under the holding in McRae v.Toastmaster. 358 N.C. 488, 597 S.E.2d 695 (2004) that (i) the plaintiff was terminated for misconduct; (ii) the same misconduct would have resulted in the termination of a nondisabled employee; and (iii) the termination was unrelated to plaintiff's compensable injury?
2. Whether plaintiff's inability, to retain employment with defendant-employer, find or hold other employment of any kind or other employment at a wage comparable to that earned prior to *Page 5 
the injury due to his right arm injury?
3. Whether plaintiff is entitled to evaluation and treatment of his right arm injury by plastic surgeon Anthony DeFranzo?
4. Whether plaintiff is entitled to an order compelling defendants to provide vocational rehabilitation services?
 ***********
Based upon all the competent evidence of record, and the reasonable inferences flowing therefrom, the Full Commission makes the following
 FINDINGS OF FACT
1. At hearing before the Deputy Commissioner, the plaintiff was 32 years of age. He completed the eleventh grade in school. Beginning at age eighteen, in June 1993 into early 2006, plaintiff had a continuous work history in the construction industry, primarily as a fitter/welder using his hands to operate various machines to fabricate steel beams. Plaintiff has no special skills or training, except those gained from working as a steel fabricator. Plaintiff is right-hand dominant.
2. In February 2006, plaintiff went to work for defendant-employer at its steel fabricating plant located in Winston-Salem, N.C. as a fitter/welder or steel fabricator. His normal and usual duties consisted of frequently using his hands to operate various machines, including welding machines to weld or fabricate steel beams, requiring the ability to lift objects with both hands weighing up to approximately fifty pounds. Plaintiff had no difficulty performing his employment duties for defendant-employer prior to the events of March 23, 2006.
3. On March 23, 2006 plaintiff sustained a compensable right arm injury by accident arising out of and in the course of his employment by defendant-employer. The uncontroverted evidence establishes that plaintiff became totally disabled due to his right arm injury as of this date. *Page 6 
4. Plaintiff's accident occurred during the operation of an overhead crane to move an 8000-pound steel beam to weld the beam at his workstation. The beam was suspended on cables. The crane's brakes failed to stop the beam at its intended destination threatening to strike plaintiff. Plaintiff reflexively put up his dominant right upper hand and arm to stop the beam. His right hand and forearm were sandwiched between the moving beam and a stationary building support column. The force of the errant beam drove the bones in plaintiff's forearm into his elbow joint, the elbow being crushed by the blow.
5. Plaintiff suffered an acute comminuted severely displaced fracture of his medial condoyle. In addition, plaintiff sustained a comminuted fracture of the ulna or lower arm bone at the elbow joint. Plaintiff was immediately transported to the trauma unit at North Carolina Baptist Hospital where he was admitted for emergency right arm surgery.
6. Dr. Robert Teasdall, an orthopedic surgeon, conducted extensive surgery to plaintiff's right elbow area to remove all dead muscle and other damaged soft tissue, and to reconstruct plaintiff's elbow, consisting of placement of plates and screws to hold plaintiff's elbow joint together. Dr. Zhengyu Li, a hand surgeon, transposed plaintiff's ulnar nerve to protect it during this extensive reconstructive surgery.
7. On March 27, 2006 Dr. Teasdall performed a second surgery to irrigate the wound and remove more dead tissue. On March 30, 2006, a third operation was required to help control infection and internal bleeding. On April 5, 2006, Dr. Lawrence X. Webb performed a fourth operation to graft skin from plaintiff's right thigh area to graft to plaintiff's right elbow.
8. Plaintiff's right arm was placed in a long arm cast and plaintiff was discharged from the hospital on April 10, 2006. During June and July 2006, plaintiff participated in extensive physical therapy in an effort to improve his limited right arm motion. *Page 7 
9. On August 14, 2006, plaintiff returned to defendant-employer at light duty work using only his left hand. Plaintiff retained his pre-injury wage of $13.00 per hour on a full-time basis. Plaintiff's highly modified return to work consisted of seven specific tasks identified by the defendant-employer and was accompanied by plaintiff's agreement not to take any pain medication while at work.
10. Plaintiff worked left handed until October 2006, at which time plaintiff's physician permitted some use of the right arm, with the restriction of no lifting of over ten pounds.
11. In the period from August through early December 2006, plaintiff's credible testimony establishes that he actually performed only two of the seven initial job duties identified by the defendant-employer; (a) transfer drawing tickets and cutting tickets from the office to the shop, and (b) assist quality control in making dimensional checks of fabricated material using a tape measure.
12. The undisputed record establishes that the modified light duty work offered by the defendant employer and actually performed by the plaintiff was not a regular job offered by the defendant-employer in the competitive market place, but was work created by the defendant-employer to meet plaintiff's specific medical limitations as transitional work. The duties assigned to plaintiff were previously performed by several other employees and reassigned to the plaintiff to meet his light duty work restrictions.
13. Defendant-employer follows a graduated disciplinary policy concerning employee misconduct or absences. The employer's usual disciplinary policy involves the following sequential steps: (i) verbal warning; (ii) written warning; (iii) suspension with or without pay; and (iv) discharge.
14. During August through October, 2006, defendant employer issued four disciplinary actions as follows:
15. In September 2006 plaintiff met with defendant-employer's owner Jim Brewer who warned plaintiff that he was missing too many days from work. *Page 8 
16. On October 17, 2006 the employer issued a written warning to plaintiff due to what his employer called excessive absenteeism and losing shop drawings. The shop drawings were found several days later in an office.
17. On October 18, 2006 the employer issued plaintiff a verbal warning due to plaintiff's climbing about 3 steps onto an overhead crane to help a co-employee, which the employer felt might put undue stress on plaintiff's injured arm. Plaintiff's credible testimony establishes that he was unaware that he was violating defendant-employer's policy and the use of his right arm during this incident was within Dr. Li's instructions for use of the right arm.
18. On October 23, 2006 the employer disciplined plaintiff for excessive absenteeism by sending plaintiff home for three days without pay.
19. The greater weight of the evidence establishes that during the period of August through October, all but one of plaintiffs absences from work was due to his right arm injury, and one was due to his problems with transportation to work.
20. On November 1, 2006 Dr. Li prescribed further surgery to try to increase plaintiff's elbow motion and a fifth surgery on plaintiff's elbow was performed on December 5, 2006.
21. Plaintiff was totally disabled from December 5, 2006 to January 29, 2007, at which time Dr. Li released plaintiff to return to sedentary work. Dr. Li imposed restrictions of lifting ten pounds maximum and occasionally lifting and/or carrying objections such as ledgers and small tools. Jobs are sedentary if walking and standing are required only occasionally and other sedentary criteria are met.
22. Despite the previous disciplinary actions against the plaintiff, he returned to work on January 29, 2007 with defendant employer to the same modified light duty work activities as before the December 5, 2006 surgery. Plaintiff performed these modified duties at the employer through on or April 6, 2007. *Page 9 
23. From January through April 6, 2007, the employer documented the following absences from work: February 19, 2007, left early to consult with counsel; February 26, 2007, court appearance; March 2, 2007, late because of transportation problem; March 8, 2007, late because he overslept and missed his ride; March 14, 2007, overslept and missed his ride; March 16, 2007, dental problem; and March 22, 2007, absence because of a court appearance.
24. Defendant employer unilaterally changed plaintiff's duties to that of a "template maker" on April 9, 2007. Plaintiff was physically relocated within the plant near the administrative office purportedly to permit closer observation of the plaintiff to ensure that he did not reinjure himself on the plant floor. The primary duties of a template maker required plaintiff to frequently use his dominant right upper extremity to operate various hand tools such as tapes, rules, squares, levels, dividers, compasses, razor knifes and shears or large scissors to cut large pieces of cardboard into detailed and irregular cuts from shop drawings. These tasks required extensive use of the hands for seven hours per day.
25. Plaintiff was unable to perform the regular duties of a template maker at defendant-employer due to increased right arm pain and weakness. The duties of a template maker were not suitable to the limited capacities of plaintiffs dominant right upper extremity from his accident.
26. On April 25, 2007 the defendant-employer's chief officer, Jim Brewer, along with other supervisory employees, met with plaintiff and informed him that his attendance and work performance were in need of immediate improvement and that his continued employment was in jeopardy. A written "final warning" was issued to plaintiff stating that since February 1, 2007 plaintiff had missed ten partial and/or full days of work due to personal reasons, had engaged in unsafe practices, and showed sexually explicit photographs to other employees. Defendant-employer informed plaintiff that any more problems with attendance or job performance would lead to his discharge.
27. On April 25, 2007 plaintiff returned to Dr. Li who recommended further surgery to *Page 10 
remove the surgical hardware from his reconstructed right elbow.
28. On Saturday, April 28, 2007 plaintiff failed to report for a half-day's scheduled work because he was unable to get anyone to take him. He borrowed a friend's moped to get to work that morning but had a wreck on the moped and skinned his right arm.
29. On or about April 30, 2007 defendant-employer discharged plaintiff effective May 1, 2007 for what the employer determined to be "repeated insubordination" and "repeated tardiness and absenteeism."
30. Plaintiff's termination under the employer's graduated disciplinary policy was due in part to his right arm injury which led to several absences and in part due to conduct unrelated to his right arm injury.
31. The duties plaintiff performed at defendant-employer during the period August 14, 2006 through April 30, 2007 for which he was paid $13.00 per hour, and which he performed on a full-time basis, were not indicative of plaintiff's ability to earn wages in the competitive employment market. The defendant-employer provided plaintiff with limited highly modified duties especially designed to meet his medical limitations from his right arm injury.
32. On May10, 2007 plaintiff underwent a sixth surgery on his right elbow by Dr. Li who removed hardware from plaintiff's right elbow and forearm.
33. Beginning May 10, 2007 plaintiff again became totally disabled due to his right arm injury. Defendants resumed paying plaintiff total disability compensation benefits as of the date of surgery.
34. Dr. Li authorized plaintiff to return to light duty work on June 13, 2007 and ordered a formal functional capacity evaluation. Plaintiff's specific restrictions included lifting of not more than twenty pounds maximum with frequent lifting and/or carrying objects weighing up to ten pounds. Jobs *Page 11 
within these restrictions include those in which walking and/or standing to a significant degree or sitting with a degree of pushing and pulling of controls.
35. Defendants did not provide vocational rehabilitation assistance to plaintiff to try to find possible suitable employment.
36. Physical therapist Susan Gunn conducted plaintiff's functional capacity evaluation on August 23, 2007. The evaluation perform within establishes numerous limitations due to his work related injury. Globally, the physical therapist concluded that plaintiff could perform with a medium physical demand level for an eight hour work day and restricted to lifting twenty pounds with his legs and torso. She also recommended material and frequent non-material handling for the right arm and frequent lifting and constant activity limited to the left arm. Unilateral lifting was limited to ten pounds for the right arm and shoulder and carrying a maximum of fifteen pounds.
37. Plaintiff's participation in the functional capacity evaluation caused increased right arm pain and swelling. On September 7, 2007 plaintiff returned to Dr. Li who documents plaintiff suffering from ulnar nerve neuropathy of his right elbow characterized by forearm pain, ulnar-sided weakness, decreased sensation to the ring and small fingers, decreased mobility of plaintiff's ulnar nerve and cubital tunnel syndrome.
38. Following treatment, Dr. Li released plaintiff to return to work on October 18, 2007 with the numerous restrictions noted in the functional capacity evaluation. Dr. Li released plaintiff with a twenty-seven percent impairment rating of the right arm for intriarticular injury, partial loss of elbow motion and dysthesia of the ulnar nerve. Dr. Li strongly recommended referral to an appropriate surgeon for reduction of the elbow scar.
39. Plaintiff was totally disabled during the period August 23, 2007 through October 18, 2007. *Page 12 
40. In the period since his accident, plaintiff has been unable to return to his pre-injury duties as a fitter/welder due to pain, swelling, loss of strength, loss of endurance and inability to twist his right arm due to his accident.
41. The Deputy Commissioner observed at hearing that plaintiff's right arm is visibly atrophied and scarred. Plaintiff's credible evidence supports a finding that he continues to suffer from frequent right elbow pain and limited ability to use his right arm to perform even simple activities for longer than up to about an hour at a time due to increased right elbow pain and swelling followed by a complete rest of his arm for up to an hour. The more plaintiff uses his right arm, the worse his pain becomes. Rest, heat and prescribed pain medicine provide plaintiff some relief from his pain. Plaintiff also suffers from insomnia due to his accident.
42. Plaintiff has not reached maximum medical improvement as of the date of hearing before the Deputy Commissioner. Plaintiff's credible testimony, supported by appropriate medical notes, establishes that plaintiff continues to suffer painful symptoms from his injury and insomnia.
43. In the period August 25, 2007 through January 22, 2008 plaintiff unsuccessfully applied for employment at approximately twenty-one businesses. Plaintiff was not offered any employment. Plaintiff made a reasonable and diligent job search effort to try to find possible suitable employment.
44. Defendants have not offered plaintiff vocational rehabilitation services.
45. Plaintiff has shown by the greater weight of the evidence that given his age, education, work history and his extensive physical restrictions, particularly his right arm, and current failure to achieve maximum medical improvement that employment in the competitive labor market is futile at this time.
46. Defendants have failed to show that plaintiff has refused employment suitable to his capacities. *Page 13 
47. Plaintiff has not reached maximum medical improvement. Dr. DeFranzo is approved to evaluate and provide additional treatment, including plastic surgery, if prescribed for plaintiff.
48. Dr. Li is also approved as plaintiff's treating physician along with Dr. DeFranzo.
49. Defendants have not provided plaintiff with any vocational services to help him try to find suitable employment consistent with plaintiff's limited abilities to use his dominant right arm in light of his age, education and work history.
50. Plaintiff would benefit from additional educational training to obtain his general education development, or GED, as well as new skill training to help end plaintiff's total disability.
51. Defendants' August 13, 2007 motion to terminate plaintiff's benefits due to his alleged constructive refusal to perform suitable employment at defendant-employer in contravention of N.C. Gen. Stat. § 97-32 should be denied.
52. Plaintiff has proved by the greater weight of the evidence that he is entitled to total disability compensation benefits due to his accident beginning May 1, 2007 and continuing each week thereafter until further order of the Commission.
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following:
 CONCLUSIONS OF LAW
1. On March 23, 2006 plaintiff sustained a compensable injury by accident. N.C. Gen. Stat. § 97-2(6).
2. Having filed a Form 24, defendant-employer bears the burden of proof by the greater weight of the evidence for termination or suspension of compensation to terminate plaintiff. N.C. Industrial Commission Rule 404(5).
3. Defendant employer has proven by the greater weight of the evidence that plaintiff's *Page 14 
termination for fault was proper, the misconduct would have resulted in the termination of a nondisabled employee and there was sufficient fault on the employee to conclude that grounds for termination existed unrelated to plaintiff's work related injuries. Plaintiff's termination for fault under the facts of this case constitutes a constructive refusal of employment. N.C. Gen. Stat. § 97-32; McRae v. Toastmaster.Inc., 358 N.C. 488, 597 S.E.2d 695 (2004).
4. Pursuant to Seagraves v. The Austin Company of Greensboro,123 N.C. App 228, 472 S.E.2d 397 (1996), plaintiff's constructive refusal of employment shifts the burden of proof to the plaintiff to show that his inability to find or hold other employment of any kind, or other employment at a wage comparable to that earned prior to the injury, is due to the work-related disability.
4. The plaintiff may meet this burden in one or more of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on her part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. N.C. Gen. Stat. § 97-29; Hilliard v. Apex CabinetCo. 305 N.C. 593, 290 S.E.2d 682 (1982); Peoples v. Cone Mills Corp.316 N.C. 426, 342 S.E.2d 798 (1986); Russell v. Lowe's ProductDistribution. 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Plaintiff has proven from the greater weight of all the competent evidence prongs two and three of the Russell tests that he is unable to earn the same wages he had earned before his injury. While plaintiff retains the physical capability of medium work, plaintiff's severe physical restrictions, advanced age and *Page 15 
lack of education make finding suitable employment futile. Additionally, plaintiff's reasonable and determined job search post termination proves that plaintiff's inability to find employment is related to the serious and permanent injuries sustained from his work related accident.Russell v. Lowe's Product Distribution. 108 N.C. App. 762, 425 S.E.2d 454
(1993).
6. Defendants' motion under N.C. Gen. Stat. § 97-32 to terminate plaintiff's benefits must be denied. Defendants are entitled to a credit for all disability compensation paid to plaintiff for the period beginning May 1, 2007. N.C. Gen. Stat. § 97-18.1.
7. Plaintiff is not a maximum medical improvement. Plaintiff continues to experience pain and insomnia related to his injury by accident that would benefit from evaluation and treatment. Plaintiff would also benefit from evaluation/treatment by a plastic surgeon for his right arm injury as recommended by Dr. Li. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the undersigned enter the following:
 AWARD
1. Subject to the award of attorney fees below, defendants shall pay plaintiff for his compensable injury total disability benefits at $413.89 per week from May 1, 2007 and continuing each week thereafter until such time as he returns to work or until further order of the Commission. All sums owed to the date of this Award shall be paid in lump sum. Future temporary total disability payments shall be paid weekly. Defendants are entitled to a credit for any week in which temporary total disability benefits were paid to plaintiff since May 1, 2007.
2. Defendants shall pay for all related medical compensation incurred or to be incurred by plaintiff as a result of his March 23, 2006 injury by accident, including transportation to and from health *Page 16 
care providers, and treatment for ongoing right arm pain, insomnia and evaluation/treatment for plaintiff's right arm scarring. Dr. DeFranzo is approved as plaintiff's plastic surgeon for the purposes of the evaluation/treatment ordered. Dr. Li is authorized and directed to evaluate plaintiff's continuing pain and insomnia and make appropriate referral for these conditions as necessary.
3. Plaintiff or defendants may refile a request for vocational rehabilitation services following any further treatment by Dr. DeFranzo and/or for plaintiff's pain and insomnia.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's counsel and shall be paid to plaintiff's counsel by payment of twenty-five percent of any lump sum payment of past-due benefits, and then thereafter paying every fourth disability payment directly to plaintiff's counsel.
5. Defendants shall pay all costs.
This the 17th day of March 2009.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LAURA K. MAVRETIC COMMISSIONER *Page 1